UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-348-F

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL JEROME WHITE, )<br>    Defendant. ) | ORDER |

This matter is before the court upon the United States of America's ("the Government") Motion for Sanctions [DE-29] and Motion for Summary Judgment [DE-34] and Michael Jerome White's ("Mr. White") Motion for Leave to Amend Answer to Complaint [DE-37]. All motions have been briefed and are ripe for disposition.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Federal Family Education Loan Program

The Federal Family Education Loan Program ("FFELP"), which is authorized under Title VI, Part B of the Higher Education Act ("HEA") of 1965, as amended, 20 U.S.C. § 1071 *et seq.*, offers four types of student loans: Subsidized Stafford Loans ("Stafford"); Unsubsidized Stafford Loans, formerly known as Supplemental Loans for Students; Parent Loans for Undergraduate Students; and Consolidation loans. Pursuant to FFELP, lenders, using their own funds, make loans to qualified borrowers to faciliate attendance at eligible postsecondary schools. State agencies or non-profit organizations guarantee these loans, and the United States Department of Education ("DOE") reinsures the loans and often subsidizes them. When a borrower defaults on repayment of the loan, the guarantor pays the holder of the loan pursuant to the guaranty agreement and takes an assignment of the loan. The guarantor then files a claim with the DOE for reimbursement of a percentage of the

losses it incurred in honoring the default claim on the loan. After receiving reimbursement, the guarantor must attempt to collect on the debt and remit to DOE a corresponding percentage of the debt collected from the defaulter. If the guarantor is unsuccessful in obtaining payment from the debtor for a significant period, the DOE may take assignment of the defaulted loan and engage in its own debt collection efforts, including, as a last resort, referral to the Office of the United States Attorney for litigation.

**B. Mr. White's Loans**

On August 28 1985, Mr. White signed a Guaranteed Student Loan Promissory Note, borrowing $1,900 from the Independence Federal Savings Bank, Washington, D.C., in the form of a Guaranteed Student Loan accruing at 8% interest annually. Mem. in Support of Mot. for Summ. J., Ex. 2, Ex. B-1 from Dep. of Mr. White [DE-35-3]. According to the Government, the loan was disbursed on January 25, 1986. Mem. in Support of Mot. for Summ. J., Decl. of Delfin Reyes (hereinafter "Decl. of Reyes"), Attach. B (GSL Program Specific Screen, Debt No. 6199309060373901) [DE-35-2]. On September 5, 1986, Mr. White signed another Guaranteed Student Loan Promissory Note, borrowing $1,600.00 from the Independence Federal Savings Bank, Washington, D.C., in the form of a Guaranteed Student Loan accruing at 8% interest annually. Mem. in Support of Mot. for Summ. J., Ex. 2, Ex. B-2 from Dep. of Mr. White [DE-35-3]. The Government contends the loan was disbursed on January 27, 1987. Decl. of Reyes, Attach. C (GSL Program Specific Screen, Debt No. G199309060374002) [DE-35-2]. Mr. White signed another Guaranteed Student Loan Promissory Note on August 27, 1987, again seeking to borrow $1,600.00 from the Independence Federal Savings Bank, with interest accruing at 8% annually. Mem. in Support of Mot. for Summ. J., Ex. 2, Ex. B-3 from Dep. of Mr. White [DE-35-3]. The loan was

2].

The Government filed a Complaint against Mr. White on July 21, 2008. After receiving several extensions of time, Mr. White filed his Answer on January 23, 2009, stating: "Defendant's debt with the Department of Education was exonerated and satisfied as evidenced by documentation received from the Creditor." Ans.[DE-14].

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

### B. Analysis

To establish a prima facie case of a student loan default, the Government must prove three elements: (1) the defendant signed a promissory note for a student loan; (2) the government owns the promissory note signed by the defendant, and (3) the defendant has defaulted on the note. *See*

4

*United States v. Davis*, 28 Fed. Appx. 502, 503 (6th Cir. 2002); *United States v. Lawrence*, 276 F.3d 193, 197(5th Cir. 2001). The burden of establishing the prima facie case may be satisfied by introducing the signed promissory note, and a certificate of indebtedness signed under penalty of perjury by a loan analyst. *Guillermety v. Secretary of Education of U.S.*, 341 F. Supp.2d 682, 688 (E.D. Mich. 2003). After the federal government meets this burden, the burden then shifts to the alleged debtor to prove " 'the non-existence, extinguishment, or variance in payment of an obligation.' " *Id.* at 688 (quoting *Davis*, 28 Fed. Appx. at 503).

In this case, the Government has proffered evidence of a signed Guaranteed Student Loan Promissory Note for each of the four Stafford Loans at issue in this case. *See* Decl. of Reyes, Attach. B-E [DE-35-2]. The Government also has proffered the Certificate of Indebtedness from the United States Department of Education, wherein a loan analyst certified under penalty of perjury that White had defaulted on the loan on December 16, 1989, and owed $12,412.75 as of April 21, 2008. Compl., Ex. A, Certificate of Indebtedness [DE-1-2]. Based on the foregoing, the Government has met its burden in establishing a prima facie case.

Accordingly, the burden now shifts to Mr. White to prove the non-existence, extinguishment, or variance in payment of his obligation. Mr. White appears to argue that he never received the funds, and in his unsworn response to the motion for summary judgment, represents that he is now seeking a "discharge claim" with the DOE. His filings with the court suggest that Mr. White believes forgery or other nefarious actions are at play. Mr. White did testify in his deposition that his signature appears on at least three of the Promissory Notes, but still maintains he did not apply for a loan and paid for his education through grants. Mem. in Support of Mot. for Summ. J., Ex. 2 Dep. of Mr. White at pp. 8-9, 13-16 [DE-35-3]. He attaches as exhibits copies of three checks made

out to "Michael J White and St. Augustines[sic] College" which are not endorsed by his signature. Mem. in Support of Mot. to Deny Mot. for Summ. J., Exs. A-4 [DE-39-7], A-5 [DE-39-8] and A-6 [DE-39-9]. There is no indication in the record, however, whether these are copies of the original checks kept on file by the lender, or whether these are original checks which never were, in fact, endorsed or cashed by Mr. White and St. Augustine's College. The other unsigned documents proffered by Mr. White similarly are offered with no context as to whether these are documents that Mr. White had has had in his possession, but did not produce in discovery, or whether these are documents provided by the Government. Notably, despite an order from this court to do so, Mr. White has failed to produce any documents that support his claims that the loans were "exonerated." Nor has Mr. White proffered any sworn statement or statement made under penalty of perjury supporting his newly refined defenses. Based on this incomplete record, the court cannot say that Mr. White has met his burden in establishing a genuine issue of material fact.

It is possible, however, based on Mr. White's assertions, that his student loans may be eligible for discharge by operation of law. 20 U.S.C. § 1087(c) allows for the administrative discharge of student loans. 34 C.F.R. § 682.402, in turn, sets forth "[r]ules governing the . . . discharge of loans due to . . . false certification by a school of a borrower's eligibility for a loan." In pertinent part, Subsection (e) of § 682.402 provides:

> (1) General.
> (i) The Secretary reimburses the holder of a loan received by a borrower on or after January 1, 1986, and discharges a current or former borrower's obligation with respect to the loan in accordance with the provisions of paragraph (e) of this section, if the borrower's . . . eligibility to receive the loan was falsely certified by an eligible school. . . . A student's or other individual's eligibility to borrow shall be considered to have been falsely certified by the school if the school--
> . . .
> (B) Signed the borrower's name without authorization by the

6

borrower on the loan application or promissory note.

(ii) The Secretary discharges the obligation of a borrower with respect to a loan disbursement for which the school, without the borrower's authorization, endorsed the borrower's loan check or authorization for electronic funds transfer, unless the student for whom the loan was made received the proceeds of the loan either by actual delivery of the loan funds or by a credit in the amount of the contested disbursement applied to charges owed to the school for that portion of the educational program completed by the student. . . .

. . .

(2) Relief available pursuant to discharge

(i) Discharge under paragraph (e)(1)(i) of this section relieves the borrower of an existing or past obligation to repay the loan certified by the school, and any charges imposed or costs incurred by the holder with respect to the loan that the borrower is, or was, otherwise obligated to pay.

(ii) A discharge of a loan under paragraph (e) of this section qualifies the borrower for reimbursement of amounts paid voluntarily or through enforced collection on a loan obligation discharged under paragraph (e) of this section.

(iii) A borrower who has defaulted on a loan discharged under paragraph (e) of this section is not regarded as in default on the loan after discharge, and is eligible to receive assistance under the Title IV, HEA programs.

(iv) A discharge of a loan under paragraph (e) of this section is reported by the loan holder to all credit reporting agencies to which the holder previously reported the status of the loan, so as to delete all adverse or inaccurate credit history assigned to the loan.

(v) Discharge under paragraph (e)(1)(ii) of this section qualifies the borrower for relief only with respect to the amount of the disbursement discharged.

3) Borrower qualification for discharge. Except as provided in paragraph (e)(14) of this section, to qualify for a discharge of a loan under paragraph (e) of this section, the borrower must submit to the holder of the loan a written request and a sworn statement. The statement need not be notarized, but must be made by the borrower under penalty of perjury, and, in the statement, the borrower must--

(i) State whether the student has made a claim with respect to the school's false certification with any third party, such as the holder of a performance bond or a tuition recovery program, and if so, the amount of any payment received by the borrower (or student) or credited to the borrower's loan obligation;

. . .

(iii) In the case of a borrower requesting a discharge because the school signed the borrower's name on the loan application or promissory note--

    (A) State that the signature on either of those documents was not the signature of the borrower; and

    (B) Provide five different specimens of his or her signature, two of which must be not earlier or later than one year before or after the date of the

7

> contested signature;
>
> (iv) In the case of a borrower requesting a discharge because the school, without authorization of the borrower, endorsed the borrower's name on the loan check or signed the authorization for electronic funds transfer or master check, the borrower shall--
>> (A) Certify that he or she did not endorse the loan check or sign the authorization for electronic funds transfer or master check, or authorize the school to do so;
>> (B) Provide five different specimens of his or her signature, two of which must be not earlier or later than one year before or after the date of the contested signature; and
>> (C) State that the proceeds of the contested disbursement were not received either through actual delivery of the loan funds or by a credit in the amount of the contested disbursement applied to charges owed to the school for that portion of the educational program completed by the student;
>>
>> . . .

34 C.F.R. § 682.(e).

This court, of course, cannot offer any opinion at this juncture as to whether Mr. White is eligible for an administrative discharge. *See United States v. Wright*, 87 F.Supp.2d 464, (D.Md. 2000)("Only the Secretary, not this Court, has discretion to discharge this loan."). The burden, rather, rests upon Mr. White to avail himself of the procedures set forth in 34 C.F.R. § 682.402. *See id.* Moreover, the possibility that Mr. White may be eligible for an administrative discharge does not prevent this court from ruling on the Government's motion for summary judgment. *See Green v. United States*, 163 F.Supp.2d 593, 598 (W.D.N.C. 2000). As the District Court for the Western District of North Carolina observed: "Section 1087(c) makes no distinction between loans that are in the process of being collected and those reduced to judgment" and "depending upon the judgment rate and plaintiff's annual percentage rate, reducing this debt to judgment may work in [the debtor's] favor." *Id.* Therefore, it appears that Mr. Wright may pursue his administrative discharge even if judgment is entered on his obligation. *Id.*

8

Accordingly, the Government having established a prima facie case, and Mr. White having failed to proffer properly supported admissible evidence in support of his defense, the Government's Motion for Summary Judgment [DE-34] is ALLOWED.[1]

## III. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment [DE-34] is ALLOWED. The Government's Motion for Sanctions is DENIED as moot, and Defendant's Motion for Leave to file an Amended Answer [DE -37] is DENIED as futile.

Accordingly, it hereby is ORDERED that the Government have and recover from Defendant Michael Jerome White in the amount of $12,412.75, plus interest thereon at 8% per annum from May 22, 2008 until the date of judgment, and interest on the total sum thereafter after the legal rate per annum until paid.

SO ORDERED.

This the 17th day of November, 2009.

James C. Fox
Senior United States District Judge

---

[1] Consequently, the Government's Motion for Sanctions [DE-29], in which the Government sought an order prohibiting Mr. Wright from opposing the claims of the Government, or in the alternative, default judgment in favor of the Government, is DENIED as moot. Furthermore, Mr. Wright's Motion for Leave to file an Amended Answer [DE-37] is DENIED as futile pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.